**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| SPECTRAMED, LLC,<br>P.O. Box 307566<br>Columbus, OH 43230, | CASE NO.<br><br>JUDGE |
| SPECTRAMED, INC.,<br>504 Harcourt Road<br>Mount Vernon, OH 43050, | **COMPLAINT** |
| JOE FAVAZZO,<br>1645 Eagle Glen Drive<br>Blacklick, Ohio 43004, | **[JURY DEMAND ENDORSED HEREON]** |
|                 Plaintiffs, | |
| vs. | |
| TERESA BIBER,<br>3419 SE 8th Street #8<br>Pampano Beach, Florida 33062 | |
|             Defendant. | |

Plaintiffs SpectraMed, LLC ("SML"), SpectraMed, Inc. ("SMI"), and Joe Favazzo ("Favazzo" and, collectively with SML and SMI, hereinafter "Plaintiffs"), by and through undersigned counsel, for their Complaint against Teresa Biber ("Biber" or "Defendant"), alleges as follows:

**PARTIES**

1.      Plaintiff SML is an Ohio limited liability company with its principal place of business located in Columbus, Ohio.

2.      Plaintiff SMI is an Ohio corporation with its previous principal place of business located at 504 Harcourt Road, Mount Vernon, OH 43050.  As discussed herein, pursuant to a

certain Asset Purchase Agreement, dated December 31, 2015, Plaintiff Favazzo acquired the assets of SMI and later transferred those assets to SML.

3.      Plaintiff Favazzo is an individual residing at 1645 Eagle Glen Drive, Blacklick, Ohio 43004.  As discussed herein, Plaintiff Favazzo is the President of SML.

4.      Defendant Biber is an individual residing, upon information and belief, at 3419 SE 8th Street #8, Pompano Beach, Florida 33062.

## JURISDICTION

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338, in that this is a civil action arising, in part, under Title 17 of the United States Code.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 2201.  Alternatively, this Court possesses subject matter jurisdiction pursuant to 28 U.S.C. § 1332, as there exists complete diversity of citizenship between Plaintiffs and Biber, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

6.      This Court has personal jurisdiction over Defendant Biber pursuant to Fed.R.Civ.P. 4 and R.C. § 2307.382(A)(1), (2), (3), and/or (6) because Defendant Biber: (a) transacted business in the State of Ohio; (b) contracted with Ohio entities to supply services in the State of Ohio, and did in fact provide services in the State of Ohio on behalf of the Ohio entities; and (c) caused tortious injury either by an act or omission in the State of Ohio or an act or omission outside the State of Ohio which caused tortious injury to Plaintiffs in the State of Ohio, and Defendant might reasonably have expected that Plaintiffs would be injured thereby in Ohio.  Further, this Court possesses personal jurisdiction over Defendant Biber because Plaintiffs' causes of action asserted herein arise from Defendant Biber's acts or omissions enumerated in R.C. § 2307.382.

## VENUE

7.    Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this District.

## FACTUAL BACKGROUND

**SpectraMed and The Guardian Way®.**

8.    Plaintiff SMI has become well-known in the industry as a leader in the advancement of rehabilitation tools to restore function to the highest level possible and to improve the quality of life for dysphagia[1] patients.

9.    Plaintiff SML is also a leader in the advancement of rehabilitation tools to restore function to the highest level possible and to improve the quality of life for dysphagia patients. (SML and SMI are sometimes collectively referred to herein as "SpectraMed").

10.    Pursuant to an Asset Purchase Agreement ("APA"), dated December 31, 2015, Plaintiff Favazzo purchased the assets of Plaintiff SMI.  Thereafter, Plaintiff Favazzo transferred the assets of SMI to SML in or about August 2016.

11.    SpectraMed developed the first NMES[2] and sEMG[3] handheld devices for the treatment of dysphagia. SpectraMed prides itself on believing that clinicians and patients alike should have access to the most comprehensive rehabilitation suite in the global market.

12.    SpectraMed is the owner and creator of The Guardian Way®. The Guardian Way® is a combined clinical method and innovative tool to care for patients with dysphagia. The

---

[1] Dysphagia is a medical term used to describe a swallowing disorder.

[2] NMES stands for neuromuscular electrical stimulation, which is a treatment for dysphagia.

[3] sEMG stands for surface electromyography, which is also a treatment for dysphagia.

Guardian Way® is a non-invasive, painless treatment administered by a certified speech-language pathologist that utilizes a small portable device that generates customizable electrical pulses. These pulses flow through a wire (lead) to a pair of small pads (electrodes) placed in the space right under a patient's chin known as the submental region. The electrical current passes through the electrodes into the body and stimulates the motor nerves that results in a muscle contraction. Treatment sessions last only up to 30 minutes and use of The Guardian Way® protocol can re-educate muscles, prevent muscle disuse atrophy, strengthen weak swallowing muscles, reduce the occurrence of aspiration, and increase the speed of swallowing.

13.     In addition to the sale of dysphagia-related products (including NMES and sEMG handheld devices), SpectraMed also offers training and continuing education courses in the treatment of dysphagia through The Guardian Way®.  SpectraMed offers adult focused courses that allow participants to understand and learn how to apply the fundamental principles of NMES and sEMG for the treatment of dysphagia as independent entities, and as the therapeutic fusion which combines NMES and sEMG biofeedback.

14.     SpectraMed also helps individuals meet the requirements to become certified through the American Speech-Language-Hearing Association ("ASHA"), and prepares the required paperwork for ASHA certification.

**SpectraMed's Copyrights**

15.     SpectraMed owns several registered copyrights with respect to its work with dysphagia, including the following:

> A.     TX 7-688-017, The Role of Guardian in Dysphagia Management: Implementing A Research Protocol (the "'017 Copyright");

    B.        TX 7-689-993, The Guardian NMES Electrode Placement (the "'993 Copyright"); and

    C.        TX 7-728-708, The Role of NMES in Dysphagia Management: Use and Application of The Guardian Way, NMES Electrode Placement, The Guardian Way NMES/Dysphagia Training Course-Pre-test (the "'708 Copyright").

16.    A true and accurate copy of the U.S. Registration Certificate for the '017 Copyright, and the deposit copy therefor, are collectively attached hereto and incorporated herein as Exhibit 1.

17.    A true and accurate copy of the U.S. Registration Certificate for the '993 Copyright, and the deposit copy therefor, are collectively attached hereto and incorporated herein as Exhibit 2.

18.    A true and accurate copy of the U.S. Registration Certificate for the '708 Copyright, and the deposit copy therefor, are collectively attached hereto and incorporated herein as Exhibit 3.

**Biber & The Biber Protocol®**

19.    Upon information and belief, Biber is a licensed speech-language pathologist who participates in educating people on the subject of dysphagia.

20.    Upon information and belief, Biber claims to have developed something called "The Biber Protocol®," which is a service mark identifying education services, namely, providing classes, seminars, workshops, and training in the fields of delivering neuromuscular electrical stimulation to patients, caregivers, and health care professionals. The Biber Protocol®

is based on decades of well-known and fundamental electrophysiological principles of NMES that have been used successfully in neuro-rehabilitation for over 30 years by numerous providers nationwide.

**Biber's Independent Contractor Work for SMI (2012-2014)**

21.     Beginning in or about 2012, SMI, an Ohio entity, worked with Biber on an independent contractor basis, with Plaintiff SMI paying Biber to conduct some training sessions on behalf of SMI, and to collaborate with SMI as further described below on the development of course materials, slides, outlines, and presentations (hereinafter, "Course Materials"). Biber continued to be periodically paid on an independent contractor basis for training sessions performed on behalf of SMI, an Ohio entity, and for her collaboration on the creation of Course Materials, through approximately September 2014.

22.     During this time, Biber was employed by Broward Health in Florida. As a result, SMI and Biber agreed that SpectraMed would engage Biber as an independent contractor, and that she would develop Course Materials jointly and in collaboration with SpectraMed, for use in training people through ASHA certified continuing education courses provided by SpectraMed and offered under The Guardian Way® brand, as discussed above.

23.     Biber was paid by SMI, an Ohio entity, for all work performed as an independent contractor from 2012 to about September 2014.

**The Copyright Agreements**

24.     SMI wanted to ensure that the Course Materials being jointly created by it and Biber, as described above, would be protected from third-party use and, more importantly, wanted to ensure that SMI would have all legal rights to use all parts and portions of the Course Materials as part of its ASHA certified continuing education courses and other training

programs. Specifically, prior to the initiation of their collaboration, SMI made clear to Biber that it needed to own or have all legal rights to use the Course Materials as part of its ASHA certified continuing education courses and other training programs, notwithstanding the fact that Biber allegedly incorporated some of her previous work into the Course Materials, including work she allegedly had created under The Biber Protocol®.

25. To memorialize this prior oral agreement concerning ownership and use of the Course Materials, in or about early 2013, SMI presented Biber with a Work for Hire and Assignment of Copyright Agreement (the "WFHA") and a Copyright License Agreement (the "CLA" and collectively with the WFHA, the "Agreements"). Upon information and belief, Biber executed both of these Agreements on or about February 13, 2013 at her place of employment (Broward Health), and faxed a copy to SMI on that same date. Thus, it is clear that Biber intended to, and did, enter into the Agreements to provide services to Ohio entities, including patients located in Ohio.

26. A true and accurate copy of the WFHA is attached hereto and incorporated herein as Exhibit 4.

27. A true and accurate copy of the CLA is attached hereto and incorporated herein as Exhibit 5.

28. Pursuant to the WFHA, Biber agreed that "the protocol developed, the materials developed for seminars and educational courses, are commissioned by [SpectraMed], thus considered works made for hire under 17 U.S.C. § 101 *et. seq*." (Exhibit 4). This included the Course Materials, including without limitation, any material allegedly developed by Biber under The Biber Protocol® that was incorporated into the Course Materials. As such, from the moment of their creation, the Course Materials, including without limitation, the protocol and all

materials developed for seminars and educational courses were, and continue to be, irrevocably owned by SpectraMed. Specifically, from the moment of their creation, the Course Materials were owned by SMI, and then transferred under the APA to Mr. Favazzo. Mr. Favazzo then transferred the Course Material ownership rights to SML in or about August 2016.

29.     Pursuant to the WFHA, Biber also agreed that to the extent that any of the foregoing works did not qualify as works made for hire under applicable law, "then this document shall constitute a complete and absolute assignment of any and all Copyrights and any other rights which [Biber] may have acquired thereinafter." (Exhibit 4). This included the Course Materials, including without limitation, any material allegedly developed by Biber under The Biber Protocol® that was incorporated into the Course Materials.

30.     Thus, pursuant to the WFHA, SpectraMed is the owner of the Course Materials, which consist of "the protocol, all materials developed for seminars and educational courses," including all material allegedly developed by Biber under The Biber Protocol® that was incorporated into the Course Materials. Biber, therefore, has neither the right nor the ability to revoke SpectraMed's permission to use or exploit the same.

31.     In addition, and in accordance with the WFHA, SpectraMed filed for and currently owns the registered U.S. Copyrights, attached hereto as Exhibits 1, 2, and 3 (the '017 Copyright, the '993 Copyright, and the '708 Copyright, respectively) for the Course Materials, including the protocol and related materials.

32.     Thus, pursuant to the WFHA, Biber clearly and unequivocally agreed that all non-pre-existing work in the Course Materials, specifically commissioned during the course and scope of her collaboration with SpectraMed, would be considered a work made for hire under 17 U.S.C. § 101 *et. seq.*

33.    Further, pursuant to the WFHA, Biber also agreed that any pre-existing work, including any material allegedly developed by Biber under The Biber Protocol®, that was incorporated into the Course Materials, would be completely and absolutely assigned to SpectraMed.

34.    Plaintiffs have not, at any time, licensed any of the Course Materials (including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials) to Biber for her use outside of her engagement with SpectraMed.

35.    With regard to any derivative work, modifications to the works, and/or variations to the works, the CLA expressly provides that SpectraMed has an exclusive license to use the same. (Exhibit 5). This includes any derivative works, modifications, and/or variations of The Biber Protocol® that were incorporated into the Course Materials. Under such exclusive license, SpectraMed has the sole and exclusive right to use and exploit such materials, even to Biber's own exclusion.

36.    Biber has not formally or expressly terminated the CLA, and Biber has engaged in no conduct, acts, or communications that constitute an implied termination of the CLA.

37.    Upon information and belief, Biber has used and continues to use the Course Materials owned by SpectraMed pursuant to the WFHA (including without limitation materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials) without the permission of SpectraMed and in violation of the WFHA.

38.    Upon information and belief, after execution of the CLA in early 2013, Biber used and continues to use derivative works, modifications, and/or variations of the Course Materials developed in the collaboration between the Parties, including without limitation,

materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials, in violation of the CLA.

39.     Biber's conduct constitutes an infringement of SpectraMed's copyrights in and to the Course Materials.

40.     Biber's conduct demonstrates a blatant disregard for the rights and interests of SpectraMed, and a high degree of willfulness in violating SpectraMed's legitimate rights and interests in and to its copyrighted works.

41.     SpectraMed has been, and continues to be, severely damaged as a result of Biber's willful and infringing conduct, and is entitled to the maximum relief available under applicable law.

**Biber's Employment with SMI (2014-April 2015)**

42.     On or about July 18, 2014, SMI offered employment to Biber with an annual salary of $75,000.00 beginning on or about September 1, 2014.  (*See* Email from R.Fisher to T.Biber, attached hereto and incorporated herein as Exhibit 6).

43.     In addition to the annual salary of $75,000.00, SMI agreed to pay Biber 5% of the gross revenue received from the purchase of The Guardian Way® equipment, electrodes, and trainings in Asia.  (Exhibit 6).

44.     Biber accepted SMI's offer of employment upon the terms and conditions outlined in Exhibit 6.  Biber started working for SMI as an employee beginning on or about September 1, 2014.

45.     In or about April 2015, SMI verbally terminated Biber's employment.  From April 2015 to present, Biber was no longer an employee of SMI.  Biber has never been an employee of SML.

46.     Biber recognized in written communications that she was terminated by SMI in or about April 2015.  Specifically, despite her termination, Biber wrote to SML in or about July 2016 asking it to commit fraud on Biber's banking institution by lying about Biber's employment status with SML in an effort to obtain refinancing on Biber's townhome.  (*See* 7/22/16 and 7/25/16 Emails from T.Biber, collectively attached hereto and incorporated herein as Exhibit 7).

47.     At no time from her date of termination in or about April 2015 until April 2017 did Biber inform Plaintiffs or anyone else at SMI or SML that she was allegedly not fully compensated for her work.

48.     Biber was paid by SMI for all work performed as an employee from on or about September 1, 2014 through on or about April 2015, except for Asia sales of The Guardian Way® equipment and/or electrodes from September 1, 2014 (the first time equipment and/or electrodes were sold in Asia) through April 2015 (the date Biber's employment was terminated).  During this period, there was approximately $68,499.40 in Asia sales for The Guardian Way® equipment and/or electrodes.  Therefore, Biber is entitled only to $3,424.97 for the Asia sales from September 1, 2014 through April 2015.

**December 31, 2015 Asset Purchase Agreement**

49.     On or about December 31, 2015, SMI sold all of its assets, but not its liabilities, to Plaintiff Favazzo under the APA.

50.     Given her termination in April 2015, Biber was not identified on any schedule to the APA as a current employee of SMI as of December 31, 2015 and, therefore, did not become a transferred employee of Plaintiff Favazzo (or later Plaintiff SML).

51. On or about August 2016, Plaintiff Favazzo transferred the SMI assets purchased under the APA to Plaintiff SML. This transfer included all rights in and to the Copyright Materials, and the '017 Copyright, the '993 Copyright, and the '708 Copyright.

**Biber's Additional Independent Contractor Work for SML (September 2016-April 2017)**

52. After her termination, SML agreed to hire Biber as a 1099 consultant only after Biber later informed SML in September 2016 that she had allegedly been completing ongoing ASHA paperwork (which Biber admitted took her only about 10 hours per month to complete).

53. Biber was paid for this ASHA work at a rate of $1,500 per month from approximately September 2016 through April 2017. Biber agreed to the $1,500 per month rate during a telephone conference with Messrs. Fisher and Favazzo of SML on or about September 20, 2016.

54. For approximately eight (8) consecutive months after September 2016, Biber accepted payment at a rate of $1,500 per month, and never informed Plaintiffs that she was not being fully compensated for any alleged ASHA work and/or that she did not accept payment at a rate of $1,500 per month.

55. Biber was paid by SML from SMI-transferred bank accounts for all work performed as an independent contractor from on or about September 2016 through on or about April 2017.

56. In or about April 2017, Biber terminated her independent contractor relationship with SML.

**Biber's Name And Likeness (2012-2017)**

57. During her time working for SMI and SML, either as an employee or an independent contract, Biber gave express or implied authorization for Plaintiffs to use her name

and likeness (including biographical information) on, among other things, the SpectraMed website, promotional and marketing materials, and/or teaching materials developed under the The Guardian Way® brand, including without limitation, the Course Materials.

58.     Further, from the beginning of her collaboration with Plaintiffs in 2012 until April, 2017, Biber at no time complained about or objected to Plaintiffs' use of her name and likeness, as described above.  At no time during this period did Biber advise Plaintiffs to remove her name and likeness from the SpectraMed website, promotional and marketing materials, and/or teaching materials developed under the The Guardian Way® brand, including without limitation, the Course Materials.  Rather, Biber actively participated in providing comments and feedback on material containing her name and likeness, thereby evidencing her express or implied authorization for Plaintiffs to use same.

59.     Indeed, in March 2017, Biber signed a photo release authorizing Plaintiffs to use her name and likeness in SpectraMed's customer catalog.  (*See* 3/7/17 Email from T.Biber, attached hereto and incorporated herein as Exhibit 8).

60.     Biber's express or implied authorization for Plaintiffs to use her name and likeness extended from in or about 2012 when Biber was first hired by SMI as an independent contractor through in or about April 2017 when Biber terminated her independent contractor relationship with SML.  To be sure, Biber demanded that Plaintiffs remove from the SpectraMed website her name and likeness for the first time in or about April 2017, notwithstanding the photo release signed by Biber in March 2017.

61.     After receiving Biber's demand to remove her name and likeness from the SpectraMed website in or about April 2017, Plaintiffs removed Biber's name and likeness from

the SpectraMed website, and completely revised all training slides and other materials to remove Biber's name and likeness, and to match new training protocols.

## COUNT I – DECLARATORY JUDGMENT

62.     Plaintiffs restate and incorporate each of the preceding paragraphs as if fully set forth herein.

63     Under 28 U.S.C. § 2201, an actual controversy exists between Plaintiffs and Biber concerning the relationship status between Plaintiffs and Biber over various periods of time, compensation paid to Biber, Plaintiffs' rights to use Biber's name and likeness, and Plaintiffs' ownership of and rights in the '017 Copyright, the '993 Copyright, the '708 Copyright, and the Course Material.

64.     Specifically, concerning the relationship status between Plaintiffs and Biber, and the compensation paid to Biber:

A.     As alleged above, Biber was an independent contractor with Plaintiff SMI from in or about 2012 through approximately September 2014.  During this period, SMI periodically paid Biber to conduct some training sessions on behalf of SMI, and to collaborate with SMI on development of the Course Materials. Biber was paid by SMI for all work performed as an independent contractor from 2012 to about September 2014.  During this period, SMI and Biber executed the WFHA and CLA, evidencing their agreements pertaining to SpectraMed's ownership in and rights to the Course Materials, and the '017 Copyright, the '993 Copyright, and the '708 Copyright.

B.     On or about July 18, 2014, SMI offered employment to Biber with an annual salary of $75,000.00 beginning on September 1, 2014.  (Exhibit 6).  In addition to

14

the annual salary of $75,000.00, SMI agreed to pay Biber 5% of the gross revenue received from the purchase of The Guardian Way® equipment, electrodes, and trainings in Asia. (Exhibit 6). Biber accepted SMI's offer of employment upon the terms and conditions outlined in Exhibit 6. Biber started working for SMI as an employee beginning on or about September 1, 2014. In or about April 2015, SMI verbally terminated Biber's employment. From April 2015 to present, Biber was no longer an employee of SMI. Biber has never been an employee of SML. At no time from her date of termination in or about April 2015 until April 2017 did Biber inform Plaintiffs or anyone else at SMI or SML that she was allegedly not fully compensated for her work. Biber was paid by SMI for all work performed as an employee from on or about September 1, 2014 through on or about April 2015, except for Asia sales of The Guardian Way® equipment and/or electrodes from September 1, 2014 (the first time equipment and/or electrodes were sold in Asia) through April 2015 (the date Biber's employment was terminated). During this period, there was approximately $68,499.40 in Asia sales for The Guardian Way® equipment and/or electrodes. Therefore, Biber is entitled only to $3,424.97 for the Asia sales from September 1, 2014 through April 2015.

C. After her termination in April 2015, SML agreed to hire Biber as a 1099 consultant only after Biber later informed SML in or about September 2016 that she had allegedly been completing ongoing ASHA paperwork (which Biber admitted took her only about 10 hours per month to complete). Biber was paid for this ASHA work at a rate of $1,500 per month from approximately September 2016 through April 2017. Biber agreed to the $1,500 per month rate during a

telephone conference with Messrs. Fisher and Favazzo of SML on or about September 20, 2016. For approximately eight (8) consecutive months after September 2016, Biber accepted payment at a rate of $1,500 per month, and never informed Plaintiffs that she was not being fully compensated for any alleged ASHA work. Biber was paid by SML from SMI-transferred bank accounts for all work performed as an independent contractor from on or about September 2016 through on or about April 2017.

D.    In or about April 2017, Biber terminated her independent contractor relationship with SML.

65.    Concerning Plaintiffs' rights to use Biber's name and likeness, Biber gave express or implied authorization for Plaintiffs to use her name and likeness (including biographical information) on, among other things, the SpectraMed website, promotional or marketing materials, and/or teaching materials developed under the The Guardian Way® brand. (*See also* Exhibit 7). Biber's express or implied authorization for Plaintiffs to use her name and likeness extended from in or about 2012 when Biber was first hired by SMI as an independent contractor through in or about April 2017 when Biber terminated her independent contractor relationship with SML.

66.    Finally, concerning the copyright issues, SpectraMed owns several registered copyrights with respect to its work with dysphagia, including the 017 Copyright, the '993 Copyright, and the '708 Copyright. Specifically, in accordance with the WFHA, SpectraMed filed for and currently owns the registered U.S. Copyrights, attached hereto as Exhibits 1, 2, and 3 (the '017 Copyright, the '993 Copyright, and the '708 Copyright, respectively) for the Course Materials, including the protocol and related materials. Additionally:

A.  Pursuant to the WFHA, SpectraMed is the owner of the Course Materials, which consist of "the protocol, all materials developed for seminars and educational courses," including all material allegedly developed by Biber under The Biber Protocol® that was incorporated into the Course Materials.  Biber, therefore, has neither the right nor the ability to revoke SpectraMed's permission to use or exploit the same.

B.  Pursuant to the WFHA, Biber clearly and unequivocally agreed that all non-pre-existing work in the Course Materials, specifically commissioned during the course and scope of her collaboration with SpectraMed, would be considered a work made for hire under 17 U.S.C. § 101 *et. seq.*

C.  Further, pursuant to the WFHA, Biber also agreed that any pre-existing work, including any material allegedly developed by Biber under The Biber Protocol® and incorporated into the Course Materials, would be completely and absolutely assigned to SpectraMed.

D.  SpectraMed has not, at any time, licensed any of the Course Materials (including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials) to Biber for her use outside of her engagement with SpectraMed.

E.  With regard to any derivative work, modifications to the works, and/or variations to the works, the CLA expressly provides that SpectraMed has an exclusive license to use the same. (Exhibit 5). This includes any derivative works, modifications, and/or variations of The Biber Protocol® that were incorporated into the Course Materials.  Under such exclusive license, SpectraMed has the sole

and exclusive right to use and exploit such materials, even to Biber's own exclusion.   Biber has not formally or expressly terminated the CLA, and Biber has engaged in no conduct, acts, or communications that constitute an implied termination of the CLA.

F.      Upon information and belief, Biber has used and continues to use the Course Materials owned by SpectraMed pursuant to the WFHA (including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials) without the permission of SpectraMed and in violation of the WFHA.

G.      Upon information and belief, after execution of the CLA in early 2013, Biber used and continues to use derivative works, modifications, and/or variations of the Course Materials developed in the collaboration between the Parties, including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials, in violation of the CLA.

67.     To resolve this dispute between the Parties, Plaintiffs respectfully request the Court declare that: (a) Biber was an independent contractor for SMI beginning in or about 2012 through approximately September 2014, and was fully paid by SMI for all work performed as an independent contractor from 2012 to about September 2014; (b) based upon the terms and conditions outlined in Exhibit 6, Biber was an employee of SMI beginning on or about September 1, 2014 through April 2015, and was fully paid by SMI for all work performed as an employee of SMI from September 1, 2014 through April 2015 except for $3,424.97 for Asia sales of The Guardian Way® equipment and/or electrodes, which Plaintiffs agree to pay Biber in resolution of this lawsuit; (c) Biber became an independent contractor for SML in or about

September 2016 through April 2017 when Biber terminated her independent contractor relationship with SML, and was fully paid by SML for all work performed as an independent contractor from September 2016 through April 2017; (d) in or about 2012 when Biber was first hired by SMI as an independent contractor through in or about April 2017 when Biber terminated her independent contractor relationship with SML, Biber gave express or implied authorization for Plaintiffs to use her name and likeness (including biographical information) on, among other things, the SpectraMed website, promotional or marketing materials, and/or teaching materials developed under the The Guardian Way® brand, including the Course Materials; (e) SpectraMed owns several registered copyrights with respect to its work with dysphagia, including the 017 Copyright, the '993 Copyright, and the '708 Copyright; (f) pursuant to the WFHA, SpectraMed is the owner of the Course Materials, which consist of "the protocol, all materials developed for seminars and educational courses," including all material allegedly developed by Biber under The Biber Protocol® that was incorporated into the Course Materials, and Biber, therefore, has neither the right nor the ability to revoke SpectraMed's permission to use or exploit the same; (g) pursuant to the WFHA, Biber clearly and unequivocally agreed that all non-pre-existing work in the Course Materials, specifically commissioned during the course and scope of her collaboration with SpectraMed, would be considered a work made for hire under 17 U.S.C. § 101 *et. seq.*; (h) pursuant to the WFHA, Biber also agreed that any pre-existing work, including any material allegedly developed by Biber under The Biber Protocol® and incorporated into the Course Materials, would be completely and absolutely assigned to SpectraMed; (i) SpectraMed has not, at any time, licensed any of the Course Materials (including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials) to Biber for her use outside of her engagement with

SpectraMed; (j) with regard to any derivative work, modifications to the works, and/or variations to the works, the CLA expressly provides that SpectraMed has an exclusive license to use the same, including without limitation, any derivative works, modifications, and/or variations of The Biber Protocol® that were incorporated into the Course Materials; (k) under such exclusive license, SpectraMed has the sole and exclusive right to use and exploit such materials; and (l) because Biber has not formally or expressly terminated the CLA, and has engaged in no conduct, acts, or communications that constitute an implied termination of the CLA, Biber must immediately and permanently cease and desist use of the Course Materials owned by SpectraMed pursuant to the WFHA (including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials), and use of derivative works, modifications, and/or variations of the Course Materials developed in the collaboration between the Parties, including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials.

## COUNT II – COPYRIGHT INFRINGEMENT

68.     Plaintiffs restate and incorporate each of the preceding paragraphs as if fully set forth herein.

69.     As a result of the WFHA, SpectraMed is the valid owner of the copyrights in and to the Course Materials, and is the owner of the '017 Copyright, the '993 Copyright, and the '708 Copyright.

70.     As a result of the CLA, SpectraMed is the sole and exclusive licensee of any derivative works created from the Course Materials, and has exclusive and sole rights to use the same.

71.     Upon information and belief, Biber has infringed SpectraMed's copyrights in and to the Course Materials, and the derivative works therefrom, including the '017 Copyright, the '993 Copyright, and the '708 Copyright, by using, copying, distributing, and/or displaying the same, all in violation of 17 U.S.C. § 501, without any legal basis or justification therefor, and without permission or authorization from Plaintiffs.

72.     Upon information and belief, Biber's foregoing infringements were willful and were done without Plaintiffs' acquiescence.

73.     Upon information and belief, Biber's foregoing infringements have continued to the present day and are ongoing and continuing at this time.

74.     Plaintiffs have sustained irreparable harm and economic injury as a result Biber's willful infringements of the copyrights in and to the Course Materials, and the derivative works therefrom, including the '017 Copyright, the '993 Copyright, and the '708 Copyright.

75.     Due to the willful and egregious nature of Biber's conduct, Plaintiffs are entitled to the maximum amount of statutory damages for each infringement as provided for under applicable law, 17 U.S.C. § 504(c).

76.     Due to the willful and egregious nature of Biber's conduct, Plaintiffs are also entitled to recover their attorneys' fees and the costs associated with this action.

77.     Due to the willful and egregious nature of Biber's conduct, Plaintiffs are also entitled to a permanent and final injunction under 17 U.S.C. § 502 on such terms as this Court may deem reasonable to prevent or restrain Biber's infringement of the copyrights in and to the Course Materials and the derivative works therefrom, including the '017 Copyright, the '993 Copyright, and the '708 Copyright.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs SpectraMed, LLC, SpectraMed, Inc., and Joe Favazzo respectfully request as follows:

(1)     On Count One, an Order declaring that: (a) Biber was an independent contractor for SMI beginning in or about 2012 through approximately September 2014, and was fully paid by SMI for all work performed as an independent contractor from 2012 to about September 2014; (b) based upon the terms and conditions outlined in Exhibit 6, Biber was an employee of SMI beginning on or about September 1, 2014 through April 2015, and was fully paid by SMI for all work performed as an employee of SMI from September 1, 2014 through April 2015 except for $3,424.97 for Asia sales of The Guardian Way® equipment and/or electrodes, which Plaintiffs agree to pay Biber in resolution of this lawsuit; (c) Biber became an independent contractor for SML in or about September 2016 through April 2017 when Biber terminated her independent contractor relationship with SML, and was fully paid by SML for all work performed as an independent contractor from September 2016 through April 2017; (d) in or about 2012 when Biber was first hired by SMI as an independent contractor through in or about April 2017 when Biber terminated her independent contractor relationship with SML, Biber gave express or implied authorization for Plaintiffs to use her name and likeness (including biographical information) on, among other things, the SpectraMed website, promotional or marketing materials, and/or teaching materials developed under the The Guardian Way® brand, including the Course Materials; (e) SpectraMed owns several registered copyrights with respect to its work with

dysphagia, including the 017 Copyright, the '993 Copyright, and the '708 Copyright; (f) pursuant to the WFHA, SpectraMed is the owner of the Course Materials, which consist of "the protocol, all materials developed for seminars and educational courses," including all material allegedly developed by Biber under The Biber Protocol® that was incorporated into the Course Materials, and Biber, therefore, has neither the right nor the ability to revoke SpectraMed's permission to use or exploit the same; (g) pursuant to the WFHA, Biber clearly and unequivocally agreed that all non-pre-existing work in the Course Materials, specifically commissioned during the course and scope of her collaboration with SpectraMed, would be considered a work made for hire under 17 U.S.C. § 101 *et. seq.*; (h) pursuant to the WFHA, Biber also agreed that any pre-existing work, including any material allegedly developed by Biber under The Biber Protocol® and incorporated into the Course Materials, would be completely and absolutely assigned to SpectraMed; (i) SpectraMed has not, at any time, licensed any of the Course Materials (including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials) to Biber for her use outside of her engagement with SpectraMed; (j) with regard to any derivative work, modifications to the works, and/or variations to the works, the CLA expressly provides that SpectraMed has an exclusive license to use the same, including without limitation, any derivative works, modifications, and/or variations of The Biber Protocol® that were incorporated into the Course Materials; (k) under such exclusive license, SpectraMed has the sole and exclusive right to use and exploit such materials; and (l) because Biber has not

formally or expressly terminated the CLA, and has engaged in no conduct, acts, or communications that constitute an implied termination of the CLA, Biber must immediately and permanently cease and desist use of the Course Materials owned by SpectraMed pursuant to the WFHA (including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials), and use of derivative works, modifications, and/or variations of the Course Materials developed in the collaboration between the Parties, including without limitation, materials allegedly developed by Biber under the Biber Protocol® and incorporated into the Course Materials;

(2) On Count Two, a finding of copyright infringement(s) against Biber and an award of damages in Plaintiffs' favor as follows: (a) the maximum amount of statutory damages for each infringement as provided for under applicable law, 17 U.S.C. § 504(c); (b) due to the willful and egregious nature of Biber's conduct, Plaintiffs are also entitled to recover their attorneys' fees and the costs associated with this action; and (c) due to the willful and egregious nature of Biber's conduct, Plaintiffs are also entitled to a permanent and final injunction under 17 U.S.C. § 502 on such terms as this Court may deem reasonable to prevent or restrain Biber's infringement of the copyrights in and to the Course Materials and the derivative works therefrom, including the '017 Copyright, the '993 Copyright, and the '708 Copyright; and

(3) Such other relief as this Court deems fair, just, and/or equitable.

Respectfully submitted,

*/s/ Ronald S. Kopp*
Ronald S. Kopp (0004950)
rkopp@ralaw.com
Jessica A. Lopez (0090508)
jlopez@ralaw.com
Roetzel & Andress, LPA
222 South Main Street
Akron, Ohio  44308
Telephone:  330.376.2700
Facsimile:  330.376.4577

Jeremy S. Young (82179)
jyoung@ralaw.com
Roetzel & Andress, LPA
41 South High Street
Huntington Center, 21st Floor
Columbus, OH  43215
Telephone:  614.463.9770

*Attorneys for Plaintiffs SpectraMed, Inc.,*
*SpectraMed, LLC, and Joe Favazzo*

## JURY DEMAND

Pursuant to Fed.R.Civ.P. 38, Plaintiffs hereby demand a trial by jury on all issues so triable.

*/s/ Ronald S. Kopp*
Ronald S. Kopp (0004950)

12290172 _1 110190.0010